IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTOR LLOYD MITCHELL, : | |
| Plaintiff : | |
| v. : | Case No. 3:22-cv-154-KAP |
| DON BOYLSTEIN, : | |
| Defendant : | |

<u>Memorandum Order</u>

  Plaintiff Victor Mitchell, an inmate in the custody of the Pennsylvania Department of Corrections at S.C.I. Somerset, filed a complaint in September 2022, ECF no. 5, alleging that his unit manager, defendant Donald Boylstein, violated the Eighth Amendment and the Prison Rape Elimination Act by failing to protect Mitchell from sexual assault by his cellmate, Terrance Morgan. Because as explained below there is no evidence that raises a genuine issue of fact relevant to Boylstein's liability, defendant's motion for summary judgment at ECF no. 69 is granted. The Clerk shall enter judgment for the defendant and mark this matter closed. This is a final appealable order.

  Defendant has moved for summary judgment, ECF no. 69 (motion), ECF no. 70 (defendants' brief), ECF no. 71 (statement of material facts or SMF), ECF no. 71 (appendix of exhibits). Plaintiff did not file a reply and the time to do so has expired. In the complaint, Mitchell alleged that Boylstein assigned Morgan and Mitchell to the same E-Unit cell on December 3, 2021, knowing aware in advance that Morgan was "an aggressive homosexual," Complaint at ¶13, "assessed as being a higher risk of being sexually abusive," Complaint at ¶18, was seriously mentally ill and noncompliant with his medication orders, listed as a high security risk, and under investigation for sexual misconduct. Complaint at ¶¶ 30-36. Meanwhile, Mitchell was assessed as being "a higher risk of being sexually victimized," Complaint at ¶18, was mentally ill, Complaint at ¶41, and "fits the known profile of prison rape victim." Complaint at ¶50.

  Mitchell alleged that between December 3, 2021 and the end of January 2022 he was sexually assaulted by Morgan; Morgan also encouraged Mitchell to kill himself. Complaint ¶¶ 59-66. Mitchell alleged that he sought assistance from mental health care providers on February 1, 2022. Mitchell was removed, that day, to a psychiatric observation cell. Complaint ¶67. On February 7, 2022, Mitchell for the first time accused Morgan of "sexual contact" in order to avoid being returned to a cell with Morgan. Mitchell wrote an ambiguous statement that did not use the word "assault," that asserted Mitchell had had sexual contact with Morgan ending about two weeks earlier, that "not every sexual act was consensual," and that Mitchell did not want "it" to continue. ECF no. 72-4, Exhibit D. Morgan was "immediately" removed from the unit. Complaint ¶¶ 68-69.

1

Mitchell's fellow inmates deduced that Mitchell had accused Morgan and so labeled Mitchell a "snitch." Mitchell did not allege any further injury as a result of that alleged label: to the contrary, he alleges that corrections personnel transferred him to protect him from the "lambasting" of his character. Complaint ¶¶ 70-75.

Mitchell claims that by putting Morgan in the same cell with him Boylstein violated the Eighth Amendment. Complaint at ¶85. The Eighth Amendment imposes liability on prison officials who, by being deliberately indifferent to the risk of serious harm, fail to prevent inmates from being injured by their fellow inmates. Proof of liability has two elements: that objectively speaking there was a substantial risk of serious harm to an inmate's health or safety, and that the defendant was subjectively aware of that risk and knowingly or recklessly disregarded it. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Bistrian v. Levi, 696 F.3d 352, 367-68 (3d Cir. 2012). The subjective element requires more than ordinary negligence, and a mistake in professional judgment "cannot be" deliberate indifference. See Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016)(Estelle v. Gamble claim).

Mitchell makes a parallel claim that the same facts constitute a violation of the Prison Rape Elimination Act by Boylstein, Complaint at ¶86, but the PREA is Spending Clause legislation that normally does not provide a private right of action and in particular does not impose individual liability for money damages. See e.g. Bowens v. Wetzel, 674 Fed.Appx. 133, 137 (3d Cir. 2017); Lee v. Kramer, No. 3:17-CV-190-KAP, 2017 WL 6729865 at *1 (W.D. Pa. Nov. 8, 2017). The PREA claim (which would be redundant if it existed) need not be discussed further.

For Farmer v. Brennan claims based on cell assignments, just as with other failure to protect claims, deliberate indifference can be established by direct or circumstantial evidence. A claim is established by evidence: 1) that a defendant knew of a concrete threat to plaintiff from a particular person but declined to act or to seek more information, or 2) that a defendant, while not aware of the particular risk that a particular person posed to a particular plaintiff, was aware of "an unreasonable and excessive risk of abuse" to inmates "generally." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001)(failure to protect inmate from sexual assault by staff member). Mitchell is therefore required to point to evidence either that Boylstein was "informed of a specific threat of harm" to Mitchell or that Boylstein was aware of a "pervasive risk of harm" from Morgan that threatened Mitchell because the Mitchell's physical or psychological characteristics made him an exceptionally vulnerable target. See Day v. Federal Bureau of Prisons, 233 Fed.Appx. 132, 133-34 (3d Cir. 2007).

What a defendant knew and when a defendant knew it must be defined with the proper level of specificity because one cannot be deliberately indifferent to a danger that must be inferred from facts a defendant does not know. A plaintiff cannot rest on "the

generally recognized but unquantified risk that inmates will assault other inmates." Hazel v. McCullough, 2007 WL 1875807 at *7 (W.D. Pa. June 27, 2007), *citing* Beers-Capitol v. Whetzel, *supra*. A general complaint that a plaintiff is "not getting along" with a cellmate does not suffice to establish a genuine issue of fact that a defendant had knowledge of a specific threat. Ned v. Kardin, 779 Fed.Appx. 75, 76 (3d Cir. 2019). The Court of Appeals has also held that knowledge of particular prior incidents of "qualitatively dissimilar" misconducts is inadequate to show knowledge of and therefore deliberate indifference to risks generally: in particular, knowledge of several consensual sexual contacts between corrections staff and inmates "**could** not (my emphasis)" place a defendant on notice of a substantial risk of rape and sexual assault by other corrections staff members on plaintiff inmates. Heggenmiller v. Edna Mahan Correctional Institution for Women, 128 Fed. Appx. 240, 245 (3d Cir.2005). On the other hand, while the presence of evidence of prior episodes of assaultive behavior by the attacker or of prior assaults on the plaintiff is certainly relevant, the absence of such evidence is not a bar to a finding of deliberate indifference. Hazel v. McCullough, *supra*, 2007 WL 1875807 at *3, *analyzing* Urrutia v. Harrisburg County Police Department, 91 F.3d 451, 456 (3d Cir. 1996).

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A dispute is genuine if and only if the evidence is such that a reasonable jury properly instructed as to the substantive law governing the disputed claim or defense could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[W]hether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case.") Where the evidence "is so one-sided that one party must prevail as a matter of law," summary judgment is appropriate. Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir.1990)(citations omitted).

Regardless of the liberal construction afforded the pleadings of *pro se* litigants, a court is not required to help make a case for a party who does not present evidence or argument. Scott v. Vantage Corporation, 845 Fed.Appx. 170, 179 (3d Cir. 2021), *citing* Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1029 (9th Cir. 2001)(in turn quoting Forsberg v. Pacific N.W. Bell Tel. Co., 840 F.2d 1409, 1418 (9th Cir. 1988)) and Herman v. City of Chicago, 870 F.2d 400, 404 (7th Cir. 1989). Mitchell's complaint asserts both that Morgan would be a danger to anyone he was celled with, and that Mitchell's known vulnerabilities put Mitchell in particular danger. Mitchell, however, does not point to any evidence that would allow an inference that before Mitchell's disclosure on February 7,

3

2022, Boylstein knew that Morgan presented an unusual risk to anyone or a particular risk of harm to Mitchell. This is notable because in Mitchell's administrative grievance filed in February 2022, *see* ECF no. 72-5, Exhibit E, Mitchell claimed that he had already "received documentary evidence establishing that: … prison officials actually knew about the substantial risk of serious harm to which I was exposed."

Mitchell does not name Boylstein -or anyone else- in his administrative grievance. Boylstein does not defend on the basis of the requirement in the administrative grievance process that an inmate identify the person whose actions are the subject of the grievance. However, it is relevant that even after the alleged receipt of documentary evidence that "prison officials" knew of Morgan's dangerousness, Mitchell did not point to Boylstein as one of those officials: Mitchell's claim to have evidence does not serve as evidence. If Mitchell did have evidence that "prison officials" had knowledge, that would not be evidence that Boylstein individually had knowledge, because reliance on that sort of transferred atmospheric knowledge is not permitted even at the pleading stage. *See* <u>Africa v. Dukes</u>, 492 Fed.Appx. 251, 253 (3d Cir. 2012):

> The Amended Complaint alleged that Africa's cellmate was unstable and had previously attacked other inmates, and that **Dukes** was well aware of the cellmate's dangerous history. The Amended Complaint does not allege or allow for the reasonable inference that **Kerker, McKeown, Teasdale, or Noel** knew of the cellmate's dangerous history, and thus fails to state an Eighth Amendment failure to protect claim against **these** defendants (my emphasis).

Boylstein states that as a unit manager Boylstein received training about the PREA's standards as they apply to housing assignments.  SMF ¶¶1-2. Boylstein also received training in the use of the Department of Corrections' in-house tool called the PREA Risk Assessment Tool (PRAT). SMF ¶5. There is no claim that PRAT is an inadequate tool, much less evidence that Boylstein used it knowing it was inadequate. PRAT divides inmates into three categories: (1) predator, (2) potential victim, and (3) no housing concern. Using PRAT, both Morgan and Mitchell were considered to have no housing concerns. SMF ¶¶6-8.  Boylstein moved Morgan from a cell on the unit's upper tier to a cell with Mitchell on the unit's bottom tier on December 3, 2021 because Morgan was considered an escape risk.  SMF ¶¶3-4.  Boylstein did not know of any complaints by other inmates about Morgan and did not know whether Morgan had been convicted for violent or sexual offenses.  SMF ¶¶9-10.  Boylstein does not explore the point further but the public docket sheets indicate that Morgan had one prior offense and that it was not for a sexual assault: the record for <u>Commonwealth v. Morgan</u>, Case no. CP-09-CR-3197-2008 (C.P. Bucks) indicates that Morgan was convicted in 2008 after a guilty plea to robbery and related offenses and to fleeing and eluding; Morgan's confinement at the time of the assault was as a result of a probation violation for which he was sentenced in 2019.

Boylstein received no report from Morgan or Mitchell in the two months after December 3, 2021 of issues between them: when on February 7, 2022, Mitchell reported that Morgan had nonconsensual sexual contact with him more than two weeks earlier, Boylstein separated them. SMF ¶¶15-17. In the subsequent investigation completed in September 2022 Mitchell gave a statement to a PSP trooper and a PREA Lieutenant that Mitchell had sexual contact with Morgan from "fear" on the first day they were celled together, but that Mitchell did not report that incident or Morgan's subsequent sexual relations with him for two months because Morgan's provision of drugs and commissary items after the sexual contact on December 3, 2021 caused Mitchell to "second guess" his fear. *See* ECF no. 72-3, Exhibit C. Both Mitchell and the local District Attorney declined criminal prosecution of Morgan; both inmates were sanctioned for sexual conduct; Mitchell was provided a z-code (single cell); and Morgan was assessed as being an institutional sexual predator. *Id.*

As the non-moving party, Mitchell must present affirmative evidence of Boylstein's deliberate indifference -and therefore his knowledge- in order to defeat Boylstein's properly supported motion for summary judgment. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). In Williams, Judge Becker discussed the problem of affirmative evidence after the lower court granted summary judgment to police officers who failed to remove the belt from a pretrial detainee who committed suicide by hanging himself. Although the decedent's suicidal tendencies were "widely known" in the "small" police department there was no direct evidence that the specific defendant officers knew of them. The defendant officers denied that they had knowledge of the decedent's risk of suicide. Neither the fact that the decedent's several unusual suicide attempts were recorded on the police blotter accessible to the defendants nor the recognized "propensity of human beings to talk about bizarre behavior" were enough to allow an inference that the defendants had actual knowledge. *Id.*

Following the holding in Williams, to create a genuine issue for trial Mitchell was required to point to direct or circumstantial evidence from which a jury could conclude that Boylstein knew **before** Mitchell's last sexual contact "over two weeks" before February 7, 2022, ECF no. 72-4, Exhibit D, of facts from which Boylstein inferred that Morgan was a substantial threat to Mitchell. Because Mitchell did not do that, no properly instructed jury could find Boylstein liable.

DATE: March 31, 2025

Keith A. Pesto,
United States Magistrate Judge

5

Notice by ECF to counsel and by U.S. Mail to:

    Victor L. Mitchell MX-8108
    S.C.I. Somerset
    1590 Walters Mill Road
    Somerset, PA 15510